IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CHESTER VAUGHN                                                                    PLAINTIFF

v.                    Civil No.6:17-CV-06046-PKH-BAB

WARDEN JAMES HOOT GIBSON,                                                         DEFENDANTS
ASSISTANT WARDEN A. JACKSON,
DISCPLINARY HEARING OFFICER
JUSTINE MINOR, LT. SETH MAXWELL,
DEPUTY DIRECTOR DEXTER PAYNE,
OFFICER T. STOUGENBURG

## ORDER

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Pursuant to 28 U.S.C. § 1915(e)(2), the Court has the obligation to screen any complaint in which an individual has sought leave to proceed IFP. 28 U.S.C. § 1915(e)(2). On review, the Court is to dismiss the Complaint, or any portion of the Complaint, that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

I.      BACKGROUND

Plaintiff filed his Complaint on May 26, 2017. (ECF No. 1). The basis of Plaintiff's claim concerns a letter he wrote to Defendant Warden Gibson, and the subsequent events triggered by this letter. Plaintiff alleges that, in this letter, he asked Defendant Gibson "why white prisoners are treated different than black prisoners." Plaintiff further alleges he asked Defendant Gibson "why is it that blacks can call each other nigger alday [sic] long and nothing be done about it but let a white man say that word and he gets a disciplinary." (ECF No. 1 at 6). Plaintiff attached

1

the disciplinary charge document concerning this letter. This charge described the letter as follows:

> On 2/24/17 at approx. 10 am I Lt. Maxwell received a letter addressed to Warden Gipson from inmate Chester Vaughn # 129334. In this letter Inmate Vaughn talks about the unfair treatment of whites and goes on to say nigger many times. Inmate Vaughn goes on to complains [sic] about their music being played after lights out, stealing chicken, cake, and cookies from the kitchen. At the bottom of the letter he asked Mr. Gipson, Why is it that a nigger can call each other nigger, but when a white man say nigger, they get in trouble? Inmate was given a confiscation form. Therefore I Lt. Maxwell charge Inmate Vaughn #129334 with rule violation 1-7 and 2-5.

(ECF No. 1 at 3). Plaintiff alleges Defendant Warden Gibson placed him in isolation without investigating anything in the letter, and told him not to send any more letters with those adjectives in them. Plaintiff alleges that Defendant Gibson therefore punished him "for using my freedom of speech." (ECF No. 1 at 5). Plaintiff alleges Defendant Assistant Warden Jackson "did not come to me to investigate anything on why I was appealing the disciplinary." (ECF No. 1 at 6). He alleges Defendant Jackson has heard blacks call each other the "n" word and done nothing about it, therefore he knows whites are treated differently than blacks. Plaintiff alleges Defendant Jackson violated his freedom of speech. (ECF No. 1at 6).

Plaintiff alleges the disciplinary charge hearing officer, Defendant Minor, did not allow him to complete his defense statement during his disciplinary hearing. Plaintiff alleges he stated he told her he wanted to address the court before he entered a plea, and she did not allow him to do so. (ECF No. 1 at 7). Specifically, Plaintiff alleges she "got into her fellings when she showed unprofessional conduct by stoping me in the court hearing when I asked her before I enter a plea I would like to address the courts. She started yelling and said no your going to enter a plea. This shows she was in her felling because she was addressing a white man who used the (n) word." [sic] (*Id.*).

2

Plaintiff alleges Defendant Maxwell did not provide the paperwork Plaintiff requested to prepare his defense. (ECF No. 1 at 8).

Plaintiff alleges he spoke to Defendant Deputy Payne through the mail many times. He alleges Defendant Payne sent him a letter telling him "it is ok for me to ask questions," but did nothing to help him or to get his disciplinary conviction overturned. Defendant Payne also denied Plaintiff's request for a hearing with Defendant Payne. (ECF No. 1 at 8).

Plaintiff alleges Defendant Stougenberg refused to let him go to the law library on two occasions, and this showed she had a personal grudge against Plaintiff for writing her up on another occasion. (ECF No. 1 at 9).

Plaintiff proceeds against all Defendants both their official and personal capacity. (ECF No. 1, pp. 5-9). Plaintiff seeks punitive damages, and to have the Defendants removed from their jobs. (ECF No. 1 at 17). He further seeks $100 per day for every day it took for him to get his Class One status back, and $100 per day for the 150 days of good-time credit that was taken from him as a result of the disciplinary conviction. (ECF No. 1 at 26).

## II. ANALYSIS

### A. Disciplinary Charge Conviction

Plaintiff's claims concerning his disciplinary charge conviction are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. The Court noted that if a successful

claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed.

The *Heck* doctrine applies to inmate disciplinary proceedings. *Edwards v. Balisok*, 520 U.S. 641 (1997); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002). An inmate challenge to the validity of a disciplinary conviction is barred by *Heck*. *Edwards,* 520 U.S. at 646-48. Any challenge to the effect of the disciplinary sanction on the award or revocation of good-time credit is also barred, as the credit will ultimately change the duration of the sentence served. *Id.* Thus, *Heck* requires favorable termination of the disciplinary charge "in an authorized state tribunal or a federal habeas court, even if the claim is for damages rather than earlier release." *Sheldon v. Hundley,* 83 231, 233 (8th Cir. 1996); *Cincoski v. Richard*, 418 Fed App'x 571, 571-72 (8th Cir. 2011) (Plaintiff's claims regarding his disciplinary convictions, including restoration of good- time credits, declaratory relief, and damages based on those convictions were *Heck*-barred.)

As long as the validity or the duration of the sentence is not implicated by the challenge, however, an inmate may bring a procedural due process challenge for prospective injunctive relief concerning the constitutionality of the prison disciplinary proceedings. *Muhammad v. Close*, 540 U.S. 749, (2004); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *see. e.g. Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (assuming the defendant had standing to do so, a claim for injunctive relief to enjoin defendants from conducting future hearings which lacked due process could survive for further review because "such relief would not call into question the underlying punishment").

Here, Plaintiff seeks monetary damages for the effects of the disciplinary charge conviction on his class status and good time credits. Because he does not allege that his disciplinary conviction was overturned or expunged, his claims for monetary damages concerning the effects his conviction are *Heck*-barred. Plaintiff also alleges a possible due process claim with his

statement that Defendant Minor was biased against him because he was a white man who used the "n" word, and therefore did not permit him to address her before entering a plea at his disciplinary hearing. Because success on this claim would challenge the validity of his conviction, this claim is also *Heck*-barred. *See e.g. Edwards*, 520 U.S. at 648 (inmate's claim for declaratory and money damages based on allegations of deceit and bias on the part of the hearing officer are not cognizable under § 1983 because they would imply the invalidity of the punishment.) Plaintiff did not allege a due process claim against Defendant Minor for prospective injunctive relief. To the extent Plaintiff's allegations concerning his disciplinary charge conviction could be interpreted as an equal protection claim, these too are *Heck*-barred because success on this claim would challenge the validity of the conviction. *See Portley-El*, 288 F.3d at 1067 (equal protection claim concerning disciplinary conviction *Heck*-barred because "the relevant inquiry is not the constitutional underpinning" of the rule; favorable termination is required for any claim which would challenge the lawfulness of his conviction or confinement).

**B. First Amendment Retaliation**

Plaintiff failed to state a plausible claim for First Amendment retaliation. Plaintiff alleges the disciplinary charge brought against him for writing a letter containing the word "nigger" multiple times was a retaliatory violation of his First Amendment right to free speech.

"To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir.2004)). "[C]laims of retaliation fail if the alleged

5

retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir. 2008). As long as there is "some evidence" the inmate actually committed a rule violation, then a retaliation claim will fail. *Id*.

Plaintiff's allegations clearly state that he wrote a letter containing a prohibited racial slur to the warden. He further attached the disciplinary documentation showing he was convicted, after a disciplinary hearing, of charges which included racial discrimination. Thus, there is "some evidence" Plaintiff actually violated a prison rule, and his retaliation claim must fail as a matter of law. Even assuming, for purposes of argument, that Plaintiff had not violated a clear and legitimate prison rule, the use of racial slurs in a written diatribe to a warden are not protected speech. *See e.g. Leonard v. Nix*, 55 F.3d 370, 371, 375-76 (8th Cir. 1995) (inmate's abusive and defamatory letter, laden with "vulgar, obscene, and racist epithets," and directed at the warden, were unprotected hate speech.)

**C. Meaningful Access to Courts - Law Library and Legal Materials**

Plaintiff also fails to allege a plausible denial of access to courts claim based on the denial of access to legal paperwork or the law library. Plaintiff alleges Defendant Maxwell did not get him a copy of the letter he sent to the warden, as well as other paperwork he wanted for his disciplinary hearing. (ECF No. 1, p. 7). Plaintiff alleges Defendant Stougenberg denied him access to the law library on two occasions because she bore him a personal grudge for "writing her up" previously. (ECF No. 1, p. 9).

Plaintiff attached grievance documents providing additional detail about his claims concerning access to the law library. In Grievance OR-17-00335, Plaintiff states that he asked Defendant Maxwell for four research cases and two copies of his letter to Warden Gibson on February 24, 2017 and February 25, 2017. He alleges he asked Defendant Maxwell for these items

6

again on March 1, 2017, and Maxwell told Plaintiff he would be able to access them for himself because he was now "out of the whole." [sic] (ECF No. 1-8 at 3). The response to this grievance states that Defendant Maxwell was not on duty on Saturday, February 25, 2017. It further states that on Monday, March 27, Plaintiff was released from isolation, and at that point could have acquired the requested items from the law library himself. The response further states that Plaintiff was scheduled to go to the law library but did not go. (ECF No. 1-8 at 2). In OR-17-00023, the grievance response[1] states that on January 7, 2017, Plaintiff did not go to the law library at his scheduled time, and was therefore denied access by Defendant Stougenberg. (ECF No. 1-6 at 1). In OR-17-00399, Plaintiff alleges he was denied access to the law library on March 14, 2017. (ECF No. 1-14 at 2). Based on the response to this grievance, it appears there was a change made in the scheduling of law library times, and that change was not communicated to Defendant Stougenberg in a timely manner. It appears that Plaintiff was therefore denied access based on the unrevised schedule. (ECF No. 1-14 at 1).

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be

---

[1] Plaintiff did not attach the initial Step Two grievance copy to his Complaint.

satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods). However, an inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (*per curiam*); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on an access-to-court claim, an inmate must show actual injury or prejudice even if denial of access to a law library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

The prison must also provide inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith,* 430 U.S. at 824-5; *see also Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir.1996)(*citing, Lewis v. Casey,* 518 U.S. at 350-1). The duty to provide such allowances is constrained by the inmates' right of *meaningful* access to the courts. *Bounds v. Smith,* 430 U.S. at 824-5.

Based on the documentation provided by Plaintiff, he was not denied access to the law library or to legal materials to defend his disciplinary charge by either Defendant Maxwell or Stougenberg. Plaintiff's allegations against Defendant Maxwell are not that he denied Plaintiff legal materials or access to the law library. Rather, Plaintiff alleges that Maxwell did not provide materials quickly enough, and then told Plaintiff he could access them himself when he was released from isolation. The grievance provided by Plaintiff indicates he asked Defendant

8

Maxwell for the materials on February 24, 2017, and again on February 25, 2017. Plaintiff was released from isolation on February 27, 2017. (ECF No. 1-8, p. 3). In his Complaint, Plaintiff did not allege he was unable to access the requested materials prior to his disciplinary charge hearing on March 1, 2017, and did not provide any allegations as to how the delay of approximately three days before he would be able to obtain for himself the requested four cases and copies of the letter he wrote resulted in actual prejudice or injury to him.

A review of the dates of Plaintiff's grievances against Defendant Stougenberg reveal that both denials to the law library occurred at a time that could not have had any relation to, or effect on, the disciplinary charge hearing for Plaintiff's letter. Plaintiff received the disciplinary charge on February 24, 2017. (ECF No. 1-1 at 1). His hearing for the disciplinary charge was held on March 1, 2017. (ECF No. 1-1). Plaintiff's grievances against Defendant Stougenberg were for denials of access to the law library which occurred on January 7, 2017 (ECF No. 1-6), and March 14, 2017. (ECF No. 1-14). Thus, the denials Plaintiff complains of occurred either well before the charge was incurred or well after the hearing had taken place. It is not possible, therefore, that either of these denials could have resulted in actual prejudice or injury to Plaintiff in his disciplinary hearing.

Finally, Plaintiff was also able to obtain a § 1983 form and file this case. Thus, Plaintiff was not denied meaningful access to the courts by either Defendant Stougenberg or Defendant Maxwell.

**D. Defendant Payne**

Plaintiff's allegations against Defendant Payne state that he acted in a discriminatory manner against Plaintiff because Plaintiff was a white man who used the "n" word. Specifically, Plaintiff alleges Defendant Payne told him it was "OK for [him] to ask questions," but then did

nothing to help Plaintiff get his conviction overturned. Plaintiff alleges he asked for a hearing with Defendant Payne to "get his point across," but Payne denied it. Plaintiff also alleges his use of the "n" word "got into [Payne's] feelings." (ECF No. 1 at 8). None of these allegations state a plausible § 1983 claim.

For these reasons, IT IS ORDERED that Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

Judgment will be entered accordingly.

IT IS SO ORDERED this 5th day of October 2017.

/s/ P. K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE